# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| SANDREAL POUNDS,<br><br>         Plaintiff,<br><br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION, LLC; and TOWER LOAN OF MISSISSIPPI, LLC;<br><br>         Defendants. | Civil Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**15 U.S.C. § 1681,** *et seq.*<br>**15 U.S.C. § 1692,** *et seq.* |

Plaintiff, Sandreal Pounds ("Plaintiff"), brings this action against Defendants Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("Trans Union"), and Tower Loan of Mississippi, LLC ("Tower") (collectively, "Defendants") under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Based upon the personal knowledge of Plaintiff, the investigation of counsel, and upon information and belief, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff alleges that Defendants Equifax and Trans Union violated the FCRA by failing to maintain reasonable procedures to ensure Plaintiff's consumer information was reported with maximal accuracy. 15 U.S.C. § 1681e(b). Further, Equifax and Trans Union violated 15 U.S.C. § 1681i by failing to properly investigate and respond to Plaintiff's disputes.

2. Plaintiff also alleges that Defendants Trans Union, Equifax, and Tower violated the FCRA by requesting and furnishing Plaintiff's consumer reports without a permissible purpose. 15 U.S.C. § 1681b, *et seq.*

3. Plaintiff alleges that Defendant Tower violated the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by using illegal, false, and deceptive means to collect a debt.

## PARTIES

4. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

5. Plaintiff resides in Washington County, Alabama. Plaintiff is a "consumer" and "person" as defined 15 U.S.C. § 1681a(b)-(c). Plaintiff is also a "person," as that term is defined in 15 U.S.C. § 1692(a)(3).

6. Defendant Equifax is a Georgia corporation that regularly conducts business in this District. Equifax regularly engages in the business of assembling or evaluating consumer information for the purposes of selling consumer reports to third parties. Therefore, Equifax is as a "consumer reporting agency" as defined by 15 U.S.C. § 1681(a)(f).

7. Equifax can be served at its principal place of business, located at 1550 Peachtree Street, N.W. in Atlanta, Georgia 30309. Defendant Equifax may be served through its registered agent located at 2 Suns Court, Peachtree Corner, GA 30092.

8. Defendant Trans Union is an Illinois corporation that regularly conducts business in this District. Trans Union regularly engages in the business of assembling or evaluating consumer information for the purposes of selling consumer reports to third parties. Therefore, Trans Union is as a "consumer reporting agency" as defined by 15 U.S.C. § 1681(a)(f).

9. Trans Union can be served at its principal place of business, located at 555 West Adams in Chicago, Illinois 60661. Defendant Trans Union may be served through its registered agent located at c/o Prentice Hall Corporation, 801 Adlai Stevenson Drive, Springfield, IL, 36106.

10. Defendant Tower is a Mississippi corporation. Tower's principal purpose is to attempt to collect debts allegedly due to another. Therefore, Tower qualifies as a "debt collector"

under 15 U.S.C. § 1692(a)(6). Additionally, Tower is a "person" as defined by 15 U.S.C. § 1681a(c).

11. Tower may be served at its registered agent, John E. Tucker, located at 406 Liberty Park Court in Flowood, Mississippi 39232.

## JURISDICTION AND VENUE

12. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

13. Plaintiff's claims This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Alabama.

## FACTUAL ALLEGATIONS

15. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

16. For the past few years, Plaintiff has worked tirelessly to repair her credit.

17. As part of that effort, Plaintiff monitors her credit scores through Credit Karma and Smart Credit.

18. Sometime in 2020, Plaintiff realized that there were a number of hard inquiries attributed to "Tower Loans."

19. Plaintiff was devastated and confused to find the inquiries, as she did not recognize the lender and her credit score had decreased after their appearance.

20. Upon information and belief, Plaintiff mailed letters to Equifax and Trans Union in or around March 2020 to dispute the Tower hard inquiries.

21. Upon information and belief, Plaintiff did not receive responses to her 2020 dispute letters.

22. On or about June 4, 2020, Plaintiff pulled her Equifax and Trans Union consumer reports to see if the hard inquiries had been removed. Upon reviewing her Trans Union and Equifax Consumer Reports, Plaintiff discovered that both credit reporting agencies still listed five hard inquiries attributed to Tower.

23. Plaintiff was extremely confused by the inquiries, as she had never contracted with Tower, nor had she applied for credit with Tower.

24. She did not know why or how Tower was repeatedly pulling her consumer report in a manner that indicated that she had applied for new credit.

25. On or about June 19, 2020, Plaintiff sent a letter to Tower, explaining that she had seen the hard inquiries on her consumer report and did not recognize them. In her letter, Plaintiff asked Tower to explain the source and purpose of the hard inquiries.

26. Plaintiff's letter included her full name, date of birth, mailing address, and social security number.

27. On or about July 14, 2020, Plaintiff received a response from Tower. The letter indicated that Tower had reviewed Plaintiff's consumer report "in an attempt to gather information to assist in the collection of your outstanding balance as authorized by your promissory note."

28. Tower's July 14, 2020, letter did not identify the alleged "promissory note" or source of the alleged "outstanding balance."

29. On or about August 4, 2020, Plaintiff sent another debt validation request to Tower. In her request, Plaintiff explained that she did not have any memory of incurring a debt with Tower.

30. Further, Plaintiff specifically requested that Tower provide her with a copy of the

promissory note mentioned in Tower's July 14th letter; a copy of the original agreement signed by Plaintiff; the contact information for the person who is allegedly responsible for the underlying debt; account statements; and any other proof that Plaintiff was responsible for the debt.

31. Additionally, in her August 4th letter, Plaintiff notified Tower that she would be disputing all of the now **six** hard inquiries that appeared on each of her consumer reports as a result of the alleged outstanding balance.

32. On or about August 18, 2020, Tower responded to Plaintiff's debt validation letter.

33. With its response, Tower enclosed copies of documents associated with the original transaction, including: the Retail Installment Contract, Harrison Finance Company Retail Application, an invoice, and proof of payment.

34. In Tower's response, it alleged that Plaintiff originally incurred the underlying debt on December 21, 2015, when Plaintiff purchased a king mattress set from Salvage World, financed by Harrison Finance Company (the "Account").

35. According to Tower, it became the owner of Plaintiff's Account when itit acquired Harrison Finance Company on March 9, 2018.

36. Again, Tower explained that it pulled Plaintiff's credit in an effort to collect on the Account. Tower then indicated that if Plaintiff wanted to avoid further inquiries, she should contact Tower directly to "work out a mutually acceptable plan with the branch to pay off her balance."

37. However, this threat is simply unsupported by reality.

38. Tower has no right to conduct hard pulls of Plaintiff's consumer credit information.

39. As Trans Union's website explains, "[h]ard inquiries typically happen when a lender or company accesses your credit report with the intention **to extend you credit** or apply for a **new** financial obligation."

40. Hard inquiries remain on a persons' consumer report for two years.

41. Hard inquiries have a direct (and, negative) impact on a consumer's credit score.

42. On Trans Union's website, it explains that "[c]redit scoring models tend to associate a high number of hard inquiries with elevated risk. This means that if you have **six or more hard inquiries** on your credit reports, you may be up to eight times more likely to file bankruptcy than someone with no hard inquiries. As a result, creditors might be less likely to extend you credit at decent interest rates."

43. Therefore, a "hard inquiry" should only appear on an individual's consumer report when they apply for new credit or modify an existing credit obligation.

44. An existing creditor or debt collector is not entitled to conduct an unlimited number of hard pulls of a consumer's credit file based on a single credit application.

45. Debt collectors and creditors are permitted to conduct periodic reviews of a consumer's credit information through "Soft Inquiries" or "Account Review Inquiries."

46. Trans Union's website explains that "[s]oft inquiries don't affect your credit score and only you can see them."

47. On or about April 1, 2021, Plaintiff mailed certified letters to Equifax and Trans Union to dispute the hard inquiries created by Tower's impermissible credit pulls. In her letters, Plaintiff also included her full name, birthdate, address, complete social security number, a copy of her ID, and proof of her address.

48. Plaintiff's dispute letters explained that she originally owed money to Salvage World, who transferred her debt to Harrison Finance, but that she was never notified that the debt was transferred to Tower.

49. Further, Plaintiff identified each of the **then-existing seven** hard inquiries on her

credit report that were the product of Tower's impermissible credit pulls, and asked that they be removed, as she had never applied for credit with Tower.

50. To date, Plaintiff has not received responses to the dispute letters she sent in or around April 2021.

51. Between March 2019 and December 2020, Tower "pulled" Plaintiff's credit information at least fourteen (14) different times, causing no fewer than seven (7) hard inquiries to be indicated on each of Plaintiff's Trans Union and Equifax consumer reports.

52. All of Tower's hard credit pulls were for impermissible purposes.

53. Only one hard inquiry should have appeared on Plaintiff's consumer report in relation to the Account. That hard inquiry, which would have been **permissibly** created when Plaintiff financed the mattress set in 2015, has not been visible on Plaintiff's consumer reports since the end of 2017.

54. Equifax and Trans Union were obligated to deny Tower's repetitive requests for Plaintiff's consumer reports.

55. Trans Union knew or had reason to know that Tower, a single creditor, was not permitted to pull Plaintiff's credit information seven or more times over the course of nine months.

56. Equifax knew or had reason to know that Tower, a single creditor, was not permitted to pull Plaintiff's information seven or more times over the course of nine months.

57. Upon information and belief, both Trans Union and Equifax provided Plaintiff's consumer reports to Tower without verifying there was a permissible purpose.

58. Both Trans Union and Equifax received disputes from Plaintiff that put them on actual notice of Tower's impermissible conduct.

59. Upon information and belief, neither Trans Union nor Equifax deleted or modified

the impermissible hard inquiries included in Plaintiff's credit files and consumer reports.

60. As of June 29, 2021, no fewer than **six** hard inquiries attributed to Tower remain on each of Plaintiff's Trans Union and Equifax consumer reports.

61. Upon information, Equifax provided Plaintiff's consumer report to at least three potential creditors, including Keesler Federal Credit Union, the US Department of Education, and Titan Homes, LLC, while reporting Tower's impermissible hard inquiries.

62. Plaintiff's application to Titan Homes, LLC was denied.

63. Upon information and belief, Plaintiff's application with Titan Homes, LLC was denied, in part, because of the Tower hard inquiries on Plaintiff's consumer report.

64. In fact, the impermissible hard inquiries on Plaintiff's consumer reports have prevented her from being able to purchase a new home or be approved for a mortgage.

65. Each time Plaintiff has met with a company to discuss a mortgage, they have indicated she would not qualify for approval.

66. Upon information, Trans Union provided Plaintiff's consumer report to at least one third party, Cb Indigo, while reporting Tower's impermissible hard inquiries.

67. Plaintiff's application to Cb Indigo was denied.

68. Upon information and belief, Plaintiff's application to Cb Indigo was denied, in part, because of the Tower hard inquiries on her consumer report.

69. Defendants' violative conduct caused Plaintiff to suffer actual damages, including credit denials, a decreased credit score and overall creditworthiness. Additionally, Defendants' violative conduct has caused Plaintiff to suffer mental and emotional pain, including stress, anguish, humiliation, and embarrassment.

70. To date, Defendants' violative actions continue to affect Plaintiff's

creditworthiness and credit score.

71. Defendants' violations of the FCRA were willful. Therefore, each of the Defendants is individually liable for Plaintiff's actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n. Additionally, Defendants are individually liable for Plaintiff's reasonable attorneys' fees and costs. 15 U.S.C. § 1681n.

72. Alternatively, Defendants' violations of the FCRA were negligent. Therefore, each of the Defendants is individually liable for Plaintiff's actual and statutory damages, in an amount to be determined at trial. 15 U.S.C. § 1681o. Additionally, Defendants are individually liable for Plaintiff's reasonable attorneys' fees and costs. 15 U.S.C. § 1681o.

73. Additionally, Defendant Tower is liable for Plaintiff's actual and statutory damages for knowingly and intentionally violating the FDCPA.

## CAUSES OF ACTION

### COUNT I
*Against Equifax and Trans Union for Violating 15 U.S.C. § 1681e(b)*

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. Defendants Equifax and Trans Union, as consumer reporting agencies, are obligated to maintain reasonable procedures to assure consumer information is reported and published with maximal accuracy. 15 U.S.C. § 1681e(b).

76. Both Equifax and Trans Union know that a hard inquiry indicates that a consumer has **applied** for credit.

77. Both Equifax and Trans Union know that it is highly unlikely that a single consumer would have applied for **new** credit seven or more times over the course of nine months.

78. Upon information and belief, both Trans Union and Equifax have actual knowledge

of the impact hard inquiries have on a consumer's credit score and overall credit worthiness.

79. Therefore, even before Plaintiff disputed the Tower inquiries, it was unreasonable for Equifax and Trans Union to each report seven or more inquiries attributed to a single creditor.

80. Upon information and belief, neither Trans Union nor Equifax maintain reasonable procedures to ensure that impermissible hard credit pulls are not included in a consumer's credit file.

81. Trans Union and Equifax's failure to maintain such procedures is a violation of 15 U.S.C. § 1681e(b).

82. As a direct result of Trans Union and Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages as detailed herein.

83. Equifax and Trans Union willfully violated 15 U.S.C. § 1681e(b). Therefore, Equifax and Trans Union are individually liable to Plaintiff for her statutory and actual damages. Additionally, Equifax and Trans Union are individually liable for Plaintiff's reasonable attorney's fees and costs, and punitive damages to be determined at trial. 15 U.S.C. § 1681n.

84. Alternatively, Equifax and Trans Union negligently violated 15 U.S.C. § 1681e(b). Therefore, Equifax and Trans Union are individually liable for Plaintiff's actual damages, statutory damages, and reasonable attorney's fees and costs. 15 U.S.C. § 1681o.

## COUNT II
### *Against Equifax and Trans Union for Violating 15 U.S.C. § 1681i*

85. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

86. After Trans Union and Equifax received Plaintiff's dispute letters, their duties as consumer reporting agencies under 15 U.S.C. § 1681i were triggered.

87. Under 15 U.S.C. § 1681i, upon receiving a dispute from a consumer, a credit

reporting agency must forward the dispute to the furnisher; conduct a reasonable reinvestigation of the disputed information, during which the consumer reporting agency is required to review all relevant information. 15 U.S.C. §§ 1681i(a)(1)-(2), (4).

88. Thereafter, the consumer reporting agency is required to modify or delete any inaccurate, incomplete, or unverifiable data. If any of the consumer's information is changed as a result of the reinvestigation, the consumer reporting agency must forward the results of the reinvestigation to any party who previously received the inaccurate, incomplete, or unverified information. 15 U.S.C. §§ 1681i(a)(4)-(6).

89. Equifax and Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was accurate and record the current status of the disputed information or delete the item from Plaintiff's consumer reports.

90. Equifax and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit files and consumer reports.

91. It is patently inaccurate to report hard inquiries on a consumer's report when the consumer did not apply for credit or authorize a hard credit pull.

92. If not patently inaccurate, it was materially misleading to report as many as seven hard inquiries, all attributed to Tower, on Plaintiff's consumer reports.

93. Equifax and Trans Union continued to report six or more of the Tower inquiries on Plaintiff's consumer reports after they were notified of Tower's impermissible purposes.

94. Both Trans Union and Equifax have actual knowledge that third parties consider the number of hard inquiries on a person's consumer report when evaluating their credit worthiness.

95. Both Trans Union and Equifax have actual knowledge that a consumer's credit score is negatively impacted by a high number of hard inquiries.

96. Therefore, both Trans Union and Equifax knew or should have known that Plaintiff's credit score and overall credit worthiness would be harmed by their continued reporting of the impermissible hard inquiries.

97. Equifax and Trans Union willfully violated 15 U.S.C. § 1681i. Therefore, Equifax and Trans Union are individually liable to Plaintiff for her statutory and actual damages. Additionally, Equifax and Trans Union are individually liable for Plaintiff's reasonable attorney's fees and costs, and punitive damages to be determined at trial. 15 U.S.C. § 1681n.

98. Alternatively, Equifax and Trans Union negligently violated 15 U.S.C. § 1681i. Therefore, Equifax and Trans Union are individually liable for Plaintiff's actual damages, statutory damages, and reasonable attorney's fees and costs. 15 U.S.C. § 1681o.

## COUNT III
*Against Defendants Trans Union, Equifax, and Tower for Violating 15 U.S.C. § 1681b*

99. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100. The FCRA explicitly limits 1) the purposes for which a consumer reporting agency may furnish a consumer report and 2) for which a person may request a consumer report.

101. The FCRA explicitly states that a consumer reporting agency, like Equifax or Trans Union, may only furnish a consumer report for a permissible purpose.

102. Section 1681b of the FCRA includes an exhaustive list of permissible purposes for furnishing a consumer report.

103. The FCRA prohibits a person, like Tower, from using or obtaining a consumer report for purposes not explicitly permitted by 15 U.S.C. § 1681b. 15 U.S.C. § 1681b(f).

104. As Tower admitted in its letter to Plaintiff, Tower repeatedly conducted hard inquiries into Plaintiff's account for the purposes of coercing her into paying off the Account.

105. Debt collection is not a "permissible purpose" listed in 15 U.S.C. § 1681b.

106. Therefore, each time Tower initiated a hard pull of Plaintiff's consumer report, it violated 15 U.S.C. § 1681b(f).

107. Upon information and belief, Tower impermissibly pulled Plaintiff's consumer report approximately fourteen (14) times.

108. Each time Equifax and Trans Union provided Plaintiff's consumer report to Tower, they violated 15 U.S.C. § 1681b.

109. As detailed above, there are circumstances under which there is a permissible purpose for a debt collector or servicer to conduct an account review ("soft inquiry") of a consumer's relevant credit information.

110. However, there are no circumstances under which a debt collector, like Tower, may repeatedly conduct hard inquiries into a consumer's credit information without explicit authorization.

111. As a result of Equifax, Trans Union, and Tower's violations of 15 U.S.C. § 1681b, Plaintiff suffered actual damages which have been further described above.

112. Equifax, Trans Union, and Tower's violations of the FCRA were willful. Therefore, Equifax, Trans Union, and Tower are individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

113. Additionally, Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Trans Union, and Tower in an amount to be determined by the Court. 15 U.S.C. § 1681n and § 1681o.

114.  In the alternative, Defendants' violations of the FCRA were negligent, which renders Equifax, Trans Union, and Tower individually liable for Plaintiff's statutory damages, actual damages, and reasonable costs and attorney's fees. 15 U.S.C. § 1681o.

## COUNT IV
*Against Defendant Tower for Violating 15 U.S.C. § 1692, et seq.*

115.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

116.  Congress enacted the FDCPA to address the pervasive use of abusive, deceptive, and unfair debt collection practices.

117.  The FDCPA requires that a debt collector, like Tower, validate a debt within five days of its initial communication with the consumer. 15 U.S.C § 1692g.

118.  The debt validation must be written, and include: the amount of the debt; the name of the creditor to whom the debt is owed; a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; and a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 U.S.C § 1692g.

119.  Upon information and belief, Tower failed to send Plaintiff a debt validation within five days of their initial communication, in violation of 15 U.S.C § 1692.

120.  Moreover, when Plaintiff requested a debt validation notice from Tower on or about

June 19, 2020, Tower failed to provide one in compliance with 15 U.S.C § 1692g.

121. Tower's July 14, 2020, response did not even identify the owner or amount of the original debt.

122. Instead, Tower's response simply stated that "[t]he credit inquiry in question was the result of Tower obtaining a credit report on you in an attempt to gather information to assist in the collection of your outstanding balance as authorized by your promissory note."

123. After Plaintiff sent another debt validation request on or about August 4, 2020, Tower provided limited documentation of the original Account.

124. However, while providing the debt verification, Tower threatened to continue to initiate hard inquiries on Plaintiff's consumer reports until the Account was paid off.

125. This threat was made in violation of 15 U.S.C. § 1692e(5), which prohibits a debt collector from "threat[ing] to take any action that cannot legally be taken or that is not intended to be taken."

126. As explained herein, Tower had no legal authority to initiate hard inquiries on Plaintiff's consumer reports. Each time it did so, it violated the FCRA. Threatening to continue to engage in illegal behavior in an effort to collect an alleged debt is a violation of the FDCPA.

127. Additionally, the threat was made in violation of 15 U.S.C. § 1692e(8), as the repeated initiation of impermissible hard inquiries "communicate[s] to any person credit information which is known or should be known to be false."

128. To that end, the threat was also made in violation of 15 U.S.C. § 1692e(8), which prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

129. Each time Tower pulled Plaintiff's consumer report, it indicated to potential

creditors that Plaintiff was applying for new credit.

130. Tower knew or should have known its repeated hard inquiries would lead potential creditors and the consumer reporting agencies to believe Plaintiff was applying for new credit.

131. Tower knew Plaintiff had not applied for new credit.

132. Tower knew or should have known it was deceptive to initiate multiple hard inquiries in an effort to collect Plaintiff's Account.

133. Tower's violations of the FDCPA were committed knowingly and intentionally in an effort to coerce Plaintiff into repaying the alleged debt.

134. Tower's violative conduct caused Plaintiff to suffer actual damages, including a reduced credit score, mental and emotional pain, anguish, and stress.

135. Specifically, Tower's repetitive inquiries made Plaintiff feel extremely defeated and disappointed. Plaintiff felt as though she was working incredibly hard to improve her credit, while Tower continued to damage her credit score.

136. Accordingly, Tower is liable for Plaintiff's statutory and actual damages under 15 U.S.C. § 1692k.

## JURY DEMAND

137. Plaintiff demands a trial by jury.

\\

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendants:

a) Awarding Plaintiff statutory, actual, and punitive damages under 15 U.S.C. § 1681n;

b) Awarding Plaintiff statutory, actual under 15 U.S.C. § 1681o;

c) Awarding attorney's fees and costs, and other relief under 15 U.S.C. §§ 1691n, 1681o;

d) Awarding statutory and actual damages under 15 U.S.C. § 1692k; and

e) Awarding such other relief as to this Court may seem just and proper.

DATED: August 18, 2021

*/s/ David I. Schoen*
David I. Schoen, Esq.
Alabama Bar No. 0860-O42D
Local Counsel for Plaintiff
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
(334) 395-6611 Office
(917) 591-7586 Fax
Email: Schoenlawfirm@gmail.com
*Attorneys for Plaintiff*