IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SANDREAL POUNDS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 21-0363-WS-B |
| | ) |
| TOWER LOAN OF MISSISSIPPI, | ) |
| LLC, *et al.*, | ) |
| | ) |
|    Defendants. | ) |

**ORDER**

This matter comes before the Court on defendant Tower Loan of Mississippi, LLC's Motion to Dismiss Plaintiff's First Amended Complaint (doc. 33). The Motion has been briefed and is now ripe for disposition.

**I.   Background.**

Plaintiff, Sandreal Pounds, brought this action against Tower Loan of Mississippi, LLC ("Tower Loan") and two other defendants alleging violations of various consumer protection statutes. With regard to Tower Loan, Pounds alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (Count III), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (Count IV).

According to well-pleaded factual allegations of the First Amended Complaint, Pounds discovered in spring 2020 that Tower Loan had made multiple "hard inquiries" into her credit file. (Doc. 27, PageID.91, ¶¶ 18-20.)[1] In the summer of 2020, Pounds contacted Tower Loan to request explanations of the scope and purpose of these hard inquiries, and to validate the

---

[1]   The First Amended Complaint describes Tower Loan in the following terms: "One of Tower's principal purposes is to use instrumentalities of interstate commerce in the collection of debts. Upon information and belief, Tower regularly purchases debt accounts on which consumers have defaulted (including, without limitation, Plaintiff's debt account at issue in this matter) in order to collect such debts." (Doc. 27, PageID.90, ¶ 10.) Likewise, the pleading alleges that Tower Loan's "principal business purpose [is] purchasing delinquent debt accounts in order to collect on such accounts." (*Id.*, PageID.93, ¶ 36.)

underlying debt. (*Id.*, PageID.92-93, ¶¶ 25-31.) On or about August 18, 2020, Tower Loan responded by notifying Pounds that she had incurred the underlying debt in December 2015, when she purchased a mattress from Salvage World, financed by Harrison Finance Company. (*Id.*, PageID.93, ¶ 34.) Tower Loan further notified Pounds that it had acquired her account from Harrison Finance in March 2018, and that it had pulled her credit in an effort to gather information to assist with collection of the debt owed on that account. (*Id.*, ¶¶ 35, 38.) Pounds alleges that "Tower accessed Plaintiff's credit reports in a manner that falsely made it appear that Plaintiff had repeatedly applied for multiple new credit transactions with Tower [which she had not done] by making repeated hard inquiries on Plaintiff's credit report." (*Id.*, PageID.95, ¶ 50.) According to Pounds, Tower Loan's real reason for making these hard inquiries was "to have a direct and harmful effect on Plaintiff's credit standing and credit score in an effort to ***induce*** Plaintiff to pay the debt that Plaintiff allegedly owed to Tower." (*Id.*, ¶ 52.) The First Amended Complaint alleges that hard inquiries "are used to indicate applications for credit transactions," and that "[b]etween Match 2019 and December 2020, Tower 'pulled' Plaintiff's credit information at least fourteen (14) different times, causing no fewer than seven (7) hard inquiries to be indicated on each of Plaintiff's … consumer reports." (*Id.*, PageID.95-96, ¶¶ 54, 59.) Plaintiff maintains that Tower Loan's numerous credit inquiries caused her to suffer "credit denials, a decreased credit score and overall creditworthiness," as well as mental and emotional pain, stress, anguish, humiliation and embarrassment. (*Id.*, PageID.98, ¶ 77.)

On the strength of these factual allegations, Pounds purports to assert two statutory causes of action against Tower Loan. First, she contends that Tower Loan violated the FCRA by "repeatedly conduct[ing] hard inquiries into Plaintiff's credit file and consumer reports for the purposes of coercing into her into paying off the Account. … Because Tower did not access Plaintiff's consumer reports to gather information to assist with Tower's collection of the Account, but rather to coerce Plaintiff to pay the debt she allegedly owed, Tower therefore violated 15 U.S.C. § 1681b(f) each time it initiated a hard pull of Plaintiff's consumer report." (Doc. 27, PageID.102, ¶¶ 112, 114.) Second, Pounds maintains that Tower Loan violated the FDCPA by (i) failing to provide a debt validation notice in a timely manner as required by 15 U.S.C. § 1692g; (ii) threatening to continue to initiate hard inquiries on Pounds' credit until the account was paid off, in violation of 15 U.S.C. § 1692e(5) & (8); and (iii) engaging in deceptive behavior by initiating multiple hard inquiries to bring about payment on the account. (*Id.*,

PageID.104-06, ¶¶ 130-43.)  Plaintiff claims statutory and actual damages arising from these purported violations.  (*Id.*, PageID.106, ¶ 147.)  Also, plaintiff contends that the statute of limitations on her FDCPA claims should be equitably tolled through August 18, 2020 "[b]ecause Plaintiff was ignorant of Tower's identity as a debt collector or Tower's relationship to the Account and the debt allegedly owed thereunder … prior to the date on which she received Tower's August 18, 2020 correspondence."  (Doc. 27, PageID.106, ¶ 149.)

**II.    Analysis**.

       *A.    Fair Credit Reporting Act (Count III)*.

As noted, Count III of the First Amended Complaint alleges that Tower Loan violated the FCRA by obtaining Pounds' credit reports for an impermissible purpose (namely, to coerce her to pay the alleged debt, rather than to gather information for its collection activities).  By its terms, the FCRA provides, "A person shall not use or obtain a consumer report for any purpose unless … the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section."  15 U.S.C. § 1681b(f)(1).  "The FCRA narrowly circumscribes the purposes for which a person may obtain a credit report."  *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1213 (11th Cir. 2019).  One such permissible purpose delineated by the statute is "***to use the information in connection with*** a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or ***review or collection of an account of***, the consumer."  15 U.S.C. § 1681b(a)(3)(A) (emphasis added).  Without question, "it is permissible to obtain a consumer's credit report for collection purposes."  *Jiminez v. Account Services*, 233 F. Supp.3d 1359, 1365 (S.D. Fla. 2017) (citation omitted); *see also Pinson*, 942 F.3d at 1214 ("It is true that the FCRA permits a person to obtain a credit report to review or collect a consumer's account.").

In its Motion to Dismiss, Tower Loan argues that Count III must be dismissed because plaintiff's own pleading establishes that Tower Loan accessed Pounds' credit report for a permissible purpose, to-wit: collection of the account.  In defendant's view, "Accepting the allegations in the Amended Complaint as true, Plaintiff asserts multiple times that Tower Loan's actions were relating to collecting on the account."  (Doc. 40, PageID.249 (footnote omitted).)  This argument is unpersuasive because it overlooks plaintiff's clear allegations in the First Amended Complaint that (i) Tower Loan's stated reason of accessing Pounds' credit reports "in an effort to gather information to collect on the Account … was just a pretext," and (ii) "In truth,

Tower accessed Plaintiff's credit reports using the hard inquiry process intending to have a direct and harmful effect on Plaintiff's credit standing and credit score in an effort to ***induce*** Plaintiff to pay the debt." (Doc. 27, PageID.95, ¶¶ 51-52.)  Plaintiff's theory of liability on Count III is that Tower Loan pulled her credit reports not to use the information in a legitimate effort to collect a debt, but for the illegitimate purpose of damaging plaintiff's credit on an ongoing basis to coerce her into paying.  In insisting that Pounds' pleading somehow concedes the "permissible purpose" element of Count III, defendant's Motion to Dismiss fails to recognize this distinction.  Moreover, Tower Loan does not argue – and does not provide any authority – suggesting that pulling credit reports for strictly coercive purposes is permissible under the FCRA.

It is well-settled, of course, that "[t]o survive a Rule 12(b)(6) motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face. … A claim is facially plausible when the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017) (citations and internal quotation marks omitted).  Moreover, "[a] complaint that provides labels and conclusions or a formulaic recitation of the elements of a cause of action is not adequate to survive a Rule 12(b)(6) motion to dismiss. … [I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations and internal quotation marks omitted).  Defendant invokes these principles in arguing that Count III as pleaded falls short.

Here, however, Pounds' First Amended Complaint does more than merely offer a conclusory label that Tower Loan had an improper purpose in pulling her credit reports.  Rather, Pounds ascribes a specific improper purpose (namely, deliberately damaging Pounds' credit score to coerce payment) to Tower Loan, and bolsters that allegation with multiple supporting factual allegations.  One such supporting fact pleaded in the Amended Complaint is that Tower Loan wrote a letter to Pounds explaining that it would continue pulling her credit reports unless she reached a "mutually acceptable plan with the branch to pay off her balance." (Doc. 27, PageID.94, ¶ 39).[2]  Another is that Tower Loan made a point of conducting numerous

---

[2]   Defendant argues that plaintiff "mischaracterizes" the letter and that the letter cannot reasonably be viewed as supporting her "impermissible purpose" argument. (Doc. 33, (Continued)

unnecessary "hard pulls" – rather than "soft pulls" which are normally used to review a consumer's credit information and which do not affect a consumer's credit score – of Pounds' credit, when hard inquiries remain on a consumer's report for two years and negatively impact her credit score, and when industry standards dictate that hard inquiries are typically used only when persons apply for new credit or seek to modify existing credit (neither of which is applicable here). (*Id.*, ¶¶ 44-49.)³ Yet another supporting fact going to Pounds' impermissible purpose is her allegation that "Between March 2019 and December 2020, Tower 'pulled' Plaintiff's credit information at least fourteen (14) different times, causing no fewer than seven (7) hard inquiries to be indicated on each of Plaintiff's Trans Union and Equifax consumer reports." (Doc. 27, PageID.96, ¶ 59.) Considering all of these factual allegations in the aggregate, the Court concludes that Pounds has plausibly alleged that Tower Loan obtained her credit reports with an impermissible purpose, in violation of the FCRA.

---

PageID.184-85.) The Court agrees that the letter is subject to multiple reasonable interpretations, at least one of which would be innocuous and indicative of no impropriety. The relevant inquiry on Rule 12(b)(6) review, however, is whether these allegations, viewed in the light most favorable to the plaintiff, support a plausible claim of wrongdoing. The Court finds that they do. A reasonable fact finder reading the letter could construe it as indicating that Tower Loan would continue to conduct "hard pulls" of Pounds' credit reports – and therefore would continue inflicting damage on her credit – unless she worked out a plan to pay off the debt, thereby supporting plaintiff's theory of a coercive (and therefore improper) motivation for defendant's actions in repeatedly making hard pulls of Pounds' credit report.

³ The parties' briefs spill a great deal of ink about the distinction between hard inquiries and soft inquiries. For its part, Tower Loan takes pains to highlight that the FCRA does not distinguish between hard inquiries and soft inquiries and that the FCRA does not categorically proscribe such hard pulls. (Doc. 33, PageID.183-84; doc. 40, PageID.245-48.) But this argument is a straw man. Nowhere does Pounds suggest that hard pulls are *per se* violative of the FCRA or that the statute regulates hard pulls and soft pulls differently. Rather, her point is that (a) the FCRA does prohibit any credit inquiry for an impermissible purpose, and (b) Tower Loan's conduct of repeatedly using the damaging "hard pull" process against Pounds when industry standards would call for the innocuous "soft pull" process to be used instead, considered with other well-pleaded facts and circumstances, gives rise to a plausible inference of an impermissible purpose. Simply put, Tower Loan's actions in repeatedly conducting hard pulls of Pounds' credit when soft pulls would have provided the necessary information to Tower Loan without harming Pounds, all in circumstances where hard pulls generally are not done, are probative of an improper purpose, in violation of the FCRA. As such, Tower Loan's emphatic contention that "a creditor does not automatically violate the FCRA by conducting multiple hard credit pulls" (doc. 40, PageID.248) may be legally correct, but it is also of no moment here because no one is suggesting otherwise.

In the alternative, Tower Loan maintains that Count III should be dismissed because plaintiff cannot establish that defendant acted with the specified culpable mental state. "Under [the FCRA], civil liability for improper use and dissemination of credit information may be imposed only on a consumer reporting agency or user of reported information who willfully or negligently violates the FCRA." *Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1557 (11th Cir. 1985). "A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) (citations omitted). Tower Loan maintains that the First Amended Complaint does not plausibly allege that it acted willfully because the law was not adequately established that its conduct did not constitute a permissible purpose for accessing credit information. (Doc. 33, PageID.187-88.) The Court disagrees. As pleaded, the factual averments of the First Amended Complaint support a plausible claim that Tower Loan's violations were willful. After all, Pounds has alleged that Tower Loan engaged in "hard pulls" of her credit information a staggering 14 times. Both the frequency and type of inquiry are significant. It is certainly plausible that an entity in defendant's position knew or should have known that hard pulls have detrimental effects on a consumer's credit report. It is likewise plausible that an entity in defendant's position lacked a valid reason for those numerous deleterious inquiries, and was engaged in that behavior for purposes of harassing and coercing the consumer to pay up immediately before the damage to her credit intensified.[4] Perhaps Tower

---

[4] In response, Tower Loan posits that "evidence of subjective bad faith or intent of the defendant is irrelevant when there is an objectively reasonable interpretation of the statute that would allow the conduct in question." *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3rd Cir. 2012). But plaintiff's argument, if proven at trial, would foreclose the existence of an objectively reasonable interpretation of the statute allowing Tower Loan's conduct. Again, everyone agrees that FCRA allows credit pulls to use the information therein to collect a consumer's account. But plaintiff's theory is that Tower Loan was not engaged in legitimate collection activities, but was essentially weaponizing the hard inquiry process to harm Pounds, damaging her credit and coercing her to pay. As noted *supra*, Tower Loan has offered neither argument nor authority that such coercive tactics are a "permissible purpose" under the FCRA, so if the facts are as presented in the First Amended Complaint, no such "objectively reasonable interpretation" of the statute in Tower Loan's favor would exist. The issue is not (as Tower Loan frames it) whether the FCPA outlaws hard pulls. The issue is whether Tower Loan's actions in furtherance of the purpose ascribed to it in the First Amended Complaint suggest that Tower Loan acted with knowledge or reckless disregard for the law. The Court finds that Pounds has plausibly alleged that it did.

Loan can either disprove or explain away all of these allegations.  At the Rule 12(b)(6) stage, however, the Court accepts Pounds' well-pleaded factual allegations as true.  Those allegations plausibly support a finding of the requisite culpable mental state for FCRA liability.  Accordingly, the Motion to Dismiss is **DENIED** as to Count III.

        B.      *Fair Debt Collection Practices Act (Count IV).*

In Count IV of the First Amended Complaint, Pounds alleges that Tower Loan engaged in certain abusive, deceptive and unfair debt collection practices in violation of the FDCPA.  Tower Loan's Rule 12(b)(6) Motion focuses on the threshold question of whether defendant is even covered by the statute.  "The requirements of the FDCPA apply only to professional debt-collectors. … To state an FDCPA claim, [Pounds] must plausibly allege sufficient factual content to enable the court to draw a reasonable inference that [Tower Loan] meets the FDCPA's definition of debt collector and is thus subject to the Act."  *Kurtzmann v. Nationstar Mortgage LLC*, 709 Fed.Appx. 655, 658-59 (11th Cir. Oct. 10, 2017) (citations and internal quotation marks omitted).  The issue squarely presented in the Motion to Dismiss is whether the First Amended Complaint plausibly alleges that Tower Loan is a "debt collector" within the meaning of the FDCPA.

By the terms of the statute, "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect … debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Pounds has adequately alleged that Tower Loan fits within the first prong of this definition, to-wit: that it uses an instrumentality of interstate commerce or the mails in a business whose principal purpose is the collection of any debts.  Well-pleaded factual allegations of the First Amended Complaint that plausibly support this conclusion include the following: (i) "[o]ne of Tower's principal purposes is to use instrumentalities of interstate commerce in the collection of debts" (doc. 27, PageID.90, ¶ 10); (ii) "Tower regularly purchases debt accounts on which consumers have defaulted (including, without limitation, Plaintiff's debt account at issue in this matter) in order to collect such debts" (*id.*); (iii) Tower Loan mailed correspondence to Pounds explaining its purpose of "collection of your outstanding balance" (*id.*, PageID.92, ¶ 27); (iv) Tower Loan notified Pounds that it "became the owner of Plaintiff's Account when it acquired the Account and the debt resulting from the Account from Harrison Finance Company on March 9, 2018"

(*id.*, PageID.93, ¶ 35); and (v) "This acquisition of Plaintiff's debt account is directly in line with Tower's regular business activities to facilitate its principal business purpose of purchasing delinquent debt accounts in order to collect on such accounts" (*id.*, ¶ 36). Considered in the aggregate, these allegations suffice to raise a plausible inference that Tower Loan qualifies as a "debt collector" under the FDCPA because it uses the mails in conducting a business whose principal purpose is debt collection.[5]

As a fallback argument, Tower Loan contends that Count IV should be dismissed insofar as at least a portion of Pounds' FDCPA claim is time-barred. By statute, a FDCPA action "may be brought in any appropriate United States district court … **within one year** from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added). Pounds first asserted her FDCPA claim against Tower Loan in her Complaint filed in this District Court on August 18, 2021. By a straightforward application of the one-year limitations period, then, defendant argues that she is limited to suing Tower Loan for FDCPA violations occurring after August 18, 2020. Plaintiff's Complaint identifies an ongoing course of alleged wrongful conduct by Tower Loan "[b]etween March 2019 and December 2020." (Doc. 1, ¶ 51.) In its Motion to Dismiss, Tower Loan contends that Count IV should be dismissed as untimely to the extent it relies on alleged

---

[5] In contesting the point, Tower Loan insists that the "Amended Complaint is utterly void of supporting facts which might plausibly support that Tower Loan's principal purpose is debt collection." (Doc. 40, PageID.253.) The Court disagrees. After all, the First Amended Complaint directly alleges that Tower Loan is engaged in a business whose principal purpose is the collection of debts, and has buttressed that contention with specific supporting allegations relating to Tower Loan's collection of Pounds' alleged debt. Those supporting allegations elevate the First Amended Complaint above the level of "conclusory labels" by lending depth and plausibility to plaintiff's contention that Tower Loan qualifies as a FDCPA "debt collector." Moreover, Tower Loan's effort to liken this case to *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309 (11th Cir. 2015), is misplaced. In *Davidson*, the Eleventh Circuit concluded that the plaintiff's amended complaint did not plausibly allege that the defendant was a FDCPA debt collector where "[t]he amended complaint does not expressly state that the 'principal purpose' of Capital One's business is debt collection," but merely pleaded that "*some* part of Capital One's business is debt collection." *Id.* at 1317. *Davidson* is distinguishable on this basis because Pounds has expressly pleaded "principal purpose" allegations sufficient to raise a plausible inference that Tower Loan's principal purpose is debt collection. If the facts elicited during discovery reflect otherwise, then of course this issue may be revisited on summary judgment; however, plaintiff has said enough to withstand Rule 12(b)(6) dismissal.

violations between March 2019 and August 18, 2020, leaving only the portion of this claim predicated on purported FDCPA violations between August 18, 2020 and December 2020.

In response to this timeliness challenge, plaintiff pleads and argues for application of equitable tolling principles to Count IV.  Her Amended Complaint asserts, "Although a portion of Tower's violations occurred prior to August 18, 2020, Plaintiff did not know, and had no way of knowing, that Tower had acquired Plaintiff's Account and was attempting to collect on the debt Plaintiff allegedly owed to Tower."  (Doc. 27, PageID.106, ¶ 148.)  She further pleads, "Plaintiff was ignorant of Tower's identity as a debt collector or Tower's relationship to the Account and the debt allegedly owed thereunder … prior to the date on which she received Tower's August 18, 2020 correspondence."  (*Id.*, ¶ 149.)  Multiple courts in this Circuit have found that principles of equitable tolling may be applied in the FDCPA context.  *See, e.g., Stewart v. Bureaus Inv. Group No. 1, LLC*, 24 F. Supp.3d 1142, 1159 (M.D. Ala. 2014) ("The Eleventh Circuit has not expressly dealt with the application of equitable tolling in the context of FDCPA claims, but the Supreme Court has counseled that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute.") (citation and internal quotation marks omitted); *Mason v. Midland Funding LLC*, 2017 WL 6994577, *26 (N.D. Ga. July 27, 2017) (similar).  Tower Loan has not argued otherwise; therefore, the Court assumes the availability of equitable tolling in the FDCPA setting.  *See generally Fedance v. Harris*, 1 F.4th 1278, 1284 (11th Cir. 2021) ("Statutes of limitations … are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute …. We therefore presume that equitable tolling applies if the period in question is a statute of limitations.") (citations and internal quotation marks omitted).

"Equitable tolling pauses the running of … a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."  *Fedance*, 1 F.4th at 1284 (citation and internal quotation marks omitted).  "The discovery rule is distinct from the equitable-tolling doctrine."  *Id.* at 1285 (citation omitted).  "The general test for equitable tolling requires the party seeking tolling to prove (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (citations and internal quotation mark omitted).  That said, "the equitable-tolling doctrine's focus is on the plaintiff's particular circumstances and the fairness, given those

circumstances, of holding him to a hard-and-fast filing deadline." *Secretary, United States Dep't of Labor v. Preston*, 873 F.3d 877, 884 (11th Cir. 2017). Plaintiff admits in her Amended Complaint that she was aware in or around March 2020 that Tower Loan had made multiple hard credit inquiries on her credit file, and that she was sufficiently troubled by them to contact the credit bureaus directly at that time. (Doc. 27, PageID.91, ¶ 20.) Given this admitted awareness, why could Pounds not file her Complaint against Tower Loan until August 2021 if she had acted diligently? What extraordinary circumstance stood in her way and prevented untimely filing? She does not say. The well-pleaded factual allegations of the Amended Complaint do not set forth a plausible foundation for equitable tolling in this case; rather, it appears that with diligence Pounds could have brought her FDCPA claims against Tower Loan long before August 2021, and certainly as early as March 2021; moreover, the Court perceives nothing unfair about holding her to a hard-and-fast deadline even accepting at true the factual circumstances she has pleaded. Accordingly, the Motion to Dismiss is **granted** as to the portion of Count IV predicated on alleged FDCPA violations predating August 18, 2020; however, the claim will proceed as to those aspects of Count IV alleging FDCPA violations from August 18, 2020 going forward.

### III.   Conclusion.

For all of the foregoing reasons, Tower Loan's Motion to Dismiss (doc. 33) is **granted in part**, and **denied in part**. The Motion is **granted** as to the portion of Count IV grounded in allegations of wrongdoing predating August 18, 2020, and that aspect of Count IV is **dismissed** as untimely under the applicable FDCPA limitations period. In all other respects (including the portion of Count IV predicated on alleged violations from August 18, 2020 onward), the Motion to Dismiss is **denied**. Tower Loan is **ordered** to file an answer to the Amended Complaint on or before **December 20, 2021**.

DONE and ORDERED this 6th day of December, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE